UNTIED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JACE ALLEN DAVITTO,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____/

CASE NO. 11-15080

HON. MARIANNE O. BATTANI

**OPINION AND ORDER DENYING PLAINTIFF'S OBJECTIONS, ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on Plaintiff Jace Davitto's Objections to the Magistrate Judge's Report and Recommendation ("R&R") denying his petition for adult-child disability insurance benefits. (Doc. No. 19). After the administrative law judge ("ALJ") denied his initial petition, Davitto filed an action in the district court for review. The matter was referred to Magistrate Judge Laurie J. Michelson pursuant to 28 U.S.C. § 636(b)(1)(B), who recommended that Defendant's motion for summary judgment be granted and Plaintiff's motion be denied. For the reasons stated below, the Court **DENIES** Plaintiff's objections, **ADOPTS** Magistrate Judge's Report and Recommendation, **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

**I. BACKGROUND**

Plaintiff received childhood disability benefits through his father; however, the survivor benefits terminated on July 31, 2009, when Plaintiff turned eighteen years old. Although Davitto alleged disability beginning January 1, 2007, the Administrative Law

Judge ("ALJ"), who focused on the period after July 31, 2009, concluded that Davitto was not entitled to benefits. (Doc. No. 8 Ex. 2 at 2).

In his Objection, Plaintiff conceded that the Magistrate Judge "provided a thorough and accurate medical history of what is contained in the administrative record." (Doc. No. 19 at 2). Because neither party has objected to the Magistrate Judge's recitation of the administrative record, the Court adopts that portion of the R&R.

## II. STANDARD OF REVIEW

### A. Objections to Magistrate Judge's Report and Recommendation

A district court reviews de novo any portion of a magistrate judge's report and recommendation to which a party objects. 28 U.S.C. § 636(b)(1). The district "court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate" judge. Id. The requirement of de novo review "is a statutory recognition that Article III of the United States Constitution mandates that the judicial power of the United States be vested in judges with life tenure." United States v. Shami, 754 F.2d 670, 672 (6th Cir. 1985). Accordingly, Congress enacted 28 U.S.C. § 636(b)(1) to "insure[ ] that the district judge would be the final arbiter" of a matter referred to a magistrate judge. Flournoy v. Marshall, 842 F.2d 875, 878 (6th Cir. 1987).

### B. Commissioner's Disability Determination

Judicial review of the Commissioner's disability decision is limited to determining whether the findings are supported by substantial evidence and whether the Commissioner employed proper legal standards in reaching his conclusion. Brainard v. Sec'y of HHS, 889 F.2d 679, 681 (6th Cir. 1989). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged

conclusion, even if that evidence could support a decision the other way." Casey v. Sec'y of HHS, 987 F.2d 1230, 1233 (6th Cir. 1993); Lindsley v. Comm'r of Soc. Sec., 560 F.3d 601, 604 (6th Cir. 2009). Consequently, the standard of review is deferential and allows considerable latitude to administrative decisionmakers because it presupposes there is a "zone of choice" within which the decisionmakers can go either way, without interference by the courts. Felisky v. Bowen, 35 F.3d 1027, 1035 (6th Cir. 1994); Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986) (en banc).

When determining whether substantial evidence supports the Commissioner's decision, the reviewing court must take into consideration the entire record, including "whatever in the record fairly detracts from its weight." Id. When the Appeals Council declines to review the Administrative Law Judge's ("ALJ") decision, the court's review is limited to the record and evidence before the ALJ. Cotton v. Sullivan, 2 F.3d 692, 696 (6th Cir. 1993). The court may look at any evidence in the administrative record, even if it has not been cited by the ALJ. Walker v. Sec'y of HHS, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that the reviewing court discuss every piece of evidence in the record. Kornecky v. Comm'r of Soc. Sec., 167 F. App'x. 496, 508 (6th Cir. 2006). Moreover, the court may not conduct a de novo review of the evidence, determine credibility, or weigh the evidence. Brainard, 889 F.2d at 681. The court's role is limited to a search for substantial evidence, that which is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007).

3

### III.  ANALYSIS

To qualify for adult-child disability benefits, the child of an individual who dies "[f]ully or currently insured" is entitled to insurance benefits if he is under a disability before the age of 22 and was dependent on the insured individual at the time of the insured's death.  See 42 U.S.C. § 402(d)(1).  The only dispute as to Davitto's qualification for benefits under this provision is whether he was under a disability.

#### A.  Framework for Disability Determination

To qualify as "disabled" under the Social Security Act, a claimant must be "[unable] to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  In a step-by-step sequential process, the Commissioner considers whether the claimant: (1) worked during the alleged period of disability; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; (4) can return to past relevant work; and (5) if not, whether, given his age, education, and work experience, he can perform other work in the national economy.  20 C.F.R. § 416.920(a).  The plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five.  Richardson v. Sec. of HHS, 735 F.2d 962, 964 (6th Cir. 1984).

#### B. Decision of the ALJ

Here, the ALJ found that Plaintiff had not engaged in any substantial gainful employment as of the alleged disability onset date and that he had severe impairments including, bipolar disorder, polysubstance abuse, antisocial personality disorder, and

4

Attention Deficit Hyperactivity Disorder ("ADHD").  (Doc. No. 8, Ex. 2, Tr. at 12).  The ALJ nevertheless found that Plaintiff's impairments, whether considered individually or in combination did not meet the listed impairments in 20 C.F.R. Part 404, Subpart P.  In reaching this conclusion, the ALJ noted that Davitto did not suffer at least two of the following:  a "marked restriction of activities of daily living, marked difficulties in maintaining social functioning, marketed difficulties in maintaining concentration, persistence, or pace, or repeated episode of decompensation, each of extended duration."  (Id. at 13).

The ALJ went on to conclude that based upon the record, Davitto had the residual functional capacity to perform a full range of work at all exertional levels, but with some nonexertional limitations, including a limitation to "simple, routine, and repetitive tasks performed in a work environment free of fast paced production requirements involving only simple, work-related decisions; and with few, if any, work place changes."  (Id.)  In addition, Davitto "could have no interaction with the public and only occasional interaction with co-workers with no tandem tasks."  (Id. at 14).  Based upon the limitations identified by the ALJ, the vocational expert testified that Plaintiff could work as a small products assembler, hand packager, and a visual inspector.  (Id. at 55).  Consequently, Plaintiff's application for benefits was denied.

### C. Plaintiff's Objections

Davitto advances five objections to the R&R: (1) the ALJ used faulty reasoning in finding that when Davitto's mental impairment symptoms do not preclude all work when Davitto is compliant with medication; the ALJ erred in finding that Davitto's mental impairments did not meet a listed impairment; the ALJ erred in his assessment of

credibility; and the ALJ erred in the assessment of Plaintiff's residual functional capacity. Each ground is discussed below.

### 1. Compliance with Medication

Plaintiff maintains that the ALJ erred in assessing Plaintiff's mental impairments while medicated. Davitto further argues that the nature of his mental impairment distinguishes his situation from those set forth in the case law relied upon by the Magistrate Judge in recommending that the ALJ's assessment be affirmed.

At the outset, the Court recognizes that a claimant must follow doctor-prescribed treatment in those situations where "th[e] treatment can restore" the claimant's "ability to work." 20 C.F.R. § 404.1530(a). In the absence of a good reason not to follow doctor's orders, a claimant will not be deemed disabled. 20 C.F.R. § 404.1530(b). One potentially acceptable reason for the failure to follow prescribed treatment, is a claimant's mental limitations. 20 C.F.R. § 404.1530(c).

The Court is mindful that courts must consider the individual facts of each case and that the Sixth Circuit has cautioned courts not to assume that a lack of treatment supports the absence of mental limitations. Specifically, in White v. Comm'r of Soc. Sec., 572 F.3d 272, 283 (6th Cir. 2009) (citations omitted), the appellate court recognized that the failure may be a "symptom of the disorder itself." The ALJ made no such assumption here. Nevertheless, the Sixth Circuit did not prohibit the lower courts from considering noncompliance, nor did the Sixth Circuit establish a "per se rule that the existence of any mental impairment(s) constitutes an 'acceptable reason' for failing to follow prescribed treatment under 20 C.F.R. § 416.930(c)." Smith v. Astrue, 1:12-CV-00831, 2012 WL 6607007 (N.D. Ohio Dec. 18, 2012).

Courts considering whether a good reason supports a claimant's failure to comply with prescribed treatment have recognized that psychological and emotional difficulties may deprive a claimant of "the rationality to decide whether to continue treatment or medication." Frankhauser v. Barnhart, 403 F. Supp. 2d 261, 278 (W.D.N.Y. 2005) (citing Thompson v. Apfel, 1998 WL 720676, *6 (S.D.N.Y. Oct. 9, 1998) (holding ALJ erred in failing to consider whether claimant's psychological and emotional difficulties deprived claimant of the rationality to decide whether to continue treatment or medication).

Here the ALJ articulated other grounds for rejecting the limitations advocated by Plaintiff; he did not limit his consideration to compliance with treatment. For example, the ALJ found that Davitto was mildly restricted in his daily living: he could care for his basic needs, did not need reminders to take medication, and was able to do chores. (Doc. No. 8, Ex. 2 at 13, 352). Plaintiff had moderate difficulties in social functioning. Nevertheless, Plaintiff's testimony that he does not get along with or like to be around people was undermined by his testimony that he spends his day looking for cigarettes or money from other people, stays at friends' homes and uses drugs with friends and that he was well-like and respected by his peers. (Id. at 13, 211, 319). He was cooperative and pleasant throughout his psychiatric evaluations. (Id.) Plaintiff testified that he used drugs and alcohol to deal with anxiety because his doctor did not prescribe the correct medication. He also complained of racing thoughts and inability to focus, but was able to do other students' homework for money. The ALJ noted that Plaintiff's attention problems were controlled with medication. The ALJ also found that Plaintiffs' other mental health issues were ameliorated with proper medication. Therefore, the

ALJ concluded that Davitto was "able to do the things he "was motivated to do." (Id. at 16).

Plaintiff directs the Court to the decision in Veltkamp v. Comm'r of Soc. Sec., 528 F. Supp. 2d 716, 726 (W.D. Mich. 2007), wherein the court observed that many individuals who suffer from bipolar disorder "fail[ ] to discern or acknowledge the existence of the illness and, therefore, decline[ ] or fail[ ] to recognize the need for treatment." Id. (citations omitted). In Veltkamp, the administrative law judge noted as significant the claimant's "spotty" treatment for his mental illness. In reviewing the analysis, the court noted that the treatment history reflected that claimant's lack of insurance and ability to pay for treatment and the claimant's failure to accept the diagnosis and lack of desire to get treatment. Id. In addition the residual functional capacity determination was based upon only one piece of evidence, the report of a doctor who merely reviewed the medical records, but did not examine the plaintiff. Lastly, the plaintiff's care providers agreed that the "plaintiff suffered from a severe mental illness well beyond that recognized by the ALJ." Id. at 727. For example, the examiners reported that the plaintiff, who was viewed as cooperative, was unable to provide information during examinations: he told delusional stories; suffered hallucinations; laughed and cried; was unable to remain seated; and at other times just sat and stared. Id. at 722.

In the case here, the record is replete with examples of Davitto's noncompliance with taking prescribed medications for his mental problems as well as examples of how compliance improved Davitto's level of functioning. Similarly, the record demonstrates that Davitto failed to attend appointments (Doc. No. 8, Ex. 9/F 18-20, 23). See §

404.1530(a)(b) (failure to follow prescribed treatment without good reason will lead to a finding of no disability). More importantly, here, in contrast to the plaintiff in Veltkamp, Davitto recognized that he did well on his medication and admitted in June 2009, that it was a mistake not to take the medication. (Doc. No. 8, Ex. 2 at 364). The record contains no evidence that his failure to take medication was because he did not believe he suffered an illness. Davitto picked and chose which medication he would take. (Doc. No. 8, ex. 2 at 336). Plaintiff stated that he ceased taking medication because he did not believe it worked and he preferred alcohol and drugs. (Id. at 46). In sum, the record provides a sufficient basis for supporting the ALJ's findings regarding compliance with treatment–Plaintiff's noncompliance is not caused solely by Plaintiff's symptoms themselves.

### 2. Use of School Performance

The Court rejects Plaintiff's contention that the evidence of his school performance in the 2007-2008 school year should not have been considered. According to Plaintiff, because he was entitled to survivor benefits during the 2007-2008 school year, and the ALJ noted that the focus in assessing Plaintiff's claim would be on the period after July 31, 2009, when the survivor benefits terminated, any use of his successful school performance is unwarranted.

Plaintiff's position is undermined by the fact that he alleges disability beginning in January 2007, as well as the fact that the ALJ ultimately found Davitto was not disabled from January 2007 to the date of the decision (Id. at 21). Even if Davitto's condition prior to July 2009 would not have affected the benefits he could collect, his condition

prior to 2009 remained relevant to a determination of his functional abilities as of the decision date. Accordingly, the Court declines to reverse the decision on this ground.

### 3. Listed Impairment

According to Plaintiff, the Magistrate Judge believed the evidence was "close" as to whether Plaintiff met certain "B criteria." On this basis, Plaintiff challenges the decision that substantial evidence existed to support the opposite conclusion as well. To rebut the assessment, Plaintiff lists all of the evidence he concludes support his position that his psychiatric impairments meet and or equal the Listed Impairment under 20 C.F.R, Part 404, SubPart P, Appendix 1. Further, Plaintiff concludes that the analysis should have concluded at Step 3 of the sequential process, and he should have been awarded benefits.

The Court finds no error. The Sixth Circuit does not condone reversing the decision of the Commissioner because the evidence could support an opposite conclusion. See Casey v. Sec'y of HHS, 987 F.2d 1230, 1233 (6th Cir. 1993) (observing that "[s]ubstantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way"). Given the deferential standard of review employedby this Court, it finds Plaintiff's argument unpersuasive. See Felisky v. Bowen, 35 F.3d 1027, 1035 (6th Cir. 1994) (recognizing the existence of a "zone of choice" within which the decisionmakers can go either way, without interference by the courts".

### 4. Credibility

Plaintiff argues that the ALJ erred in discounting his credibility. This Circuit is clear that credibility determinations require that the ALJ do more than make a single, conclusory statement regarding an individual's credibility. See Rogers v. Comm'r of Soc. Sec., 486 F.3d 234 (6th Cir. 2007) (noting that credibility determination must be reasonable and supported by substantial evidence).

That is not what happened here. The ALJ cited to specific inconsistencies in Plaintiff's testimony in finding his statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible in light of Plaintiff's reported activities. (Doc. No. 8, Ex. 2 at 16). The ALJ further discounted the statements provided by Plaintiff's friends and relatives based on the reasons identified in his Decision. Accordingly, the Court rejects this argument.

### 5. Residual Functional Capacity

Lastly, Plaintiff argues that the ALJ erred in concluding that the Plaintiff's residual functional capacity should be determined based upon his abilities when compliant with medication. Plaintiff cites to his significant lack of judgment given his bipolar disorder and the statements of individuals close to Plaintiff who described the impact of Plaintiff's mental impairments. According to Plaintiff, although the ALJ stated that he had taken the "statements into consideration" the statements constituted "other sources" and were consistent with the record as a whole. (Doc. No. 19 at 17).

The ALJ's assessment of Plaintiff's Residual Functional Capacity was thorough and the nonexertional limitations he incorporated were based upon evidence in the record. Accordingly, this objection lacks merit.

## IV. CONCLUSION

The decision of the Commissioner is supported by substantial evidence. Accordingly, the Court **DENIES** Plaintiff's objections, **ADOPTS** the R&R, **DENIES** Plaintiff's Motion for Summary Judgment, and **GRANTS** Defendant's Motion for Summary Judgment.

**IT IS SO ORDERED.**

                                       s/Marianne O. Battani
                                       MARIANNE O. BATTANI
                                       UNITED STATES DISTRICT JUDGE

DATE: March 28, 2013

### CERTIFICATE OF SERVICE

I hereby certify that on the above date a copy of this Opinion and Order was served upon all parties of record via the Court's ECF Filing System.

                                       s/Bernadette M. Thebolt
                                       Case Manager